**CARTER et al. v. BARNES et al.  (No. 3610.)**

Court of Civil Appeals of Texas.  Texarkana.
March 14, 1929.

Rehearing Denied March 28, 1929.

138

Beauchamp & Lawrence, of Paris, for appellants.

Edgar Wright, of Paris, for appellees.

LEVY, J. (after stating the case as above). Appellants present the two points in view as constituting distinct grounds of error in rendering judgment in favor of appellees, that (1) the evidence establishes that lot 1 in block 21 purchased in 1870, as well as the lot on North Main street exchanged therefor, was the separate property of Eliza Anderson; and (2) the appellees' cause of action was barred by the statute of limitation of 10 years.

It is definitely shown that Archie and Eliza Anderson were living together as husband and wife at the time of and before the deed of April 11, 1870. Such deed taken in the name of the wife during the marriage relation was presumptively community property, the face of the deed not declaring otherwise. In view of the circumstances, the trial court was justified in finding that the husband did not intend the title should vest separately in the wife; and the special verdict of the jury determines that the consideration for the lot was paid from wages and earnings of the wife during the marriage relation and the actual living together as husband and wife. Such finding of the jury may fairly be construed, as the trial court was authorized to interpret it, as relating to the time before Archie Anderson left or was forced to leave Paris in the year 1871. There is evidence to the effect that the deed was not made until the lot was paid for, and it was substantially proven that Archie Anderson did not leave Paris before April 11, 1870, the date of the deed. It is well settled that property acquired by deed after marriage and paid for out of the earnings of either the husband or the wife is community property. The beneficial interests of husband and wife in community property are equal, whether the deed be in the name of the husband or the wife. Patty v. Middleton, 82 Tex. 586, 17 S. W. 909; Burnham v. Oil Co., 108 Tex. 555, 195 S. W. 1139. The spouse in whose name the legal title is conveyed holds as trustee for the other. Mitchell v. Schofield, 106 Tex. 512, 171 S. W. 1121. The property nevertheless continued community property, although Archie Anderson may have left his wife and family after the date of the deed and the payment of the consideration. Its status as community property being fixed by law, the direct exchange of such lot for the lot on North Main street made by the wife in December, 1900, did not make the new acquisition the wife's absolute separate property or the absolute property of another. The husband's interest in the first lot entered in part into the new acquisition. That fact put an equitable title in the husband to the acquisition, as against the wife; and the wife held the same as trustee. No express agreement by the wife to hold the new acquisition in trust for the husband was necessary to entitle the husband to recover his equitable interest. Kahn v. Kahn (Tex. Civ. App.) 56 S. W. 946. The transaction was such that a trust arose by implication of law at the time of the acquisition; and this is true although the exchange of lots was made by the wife without the consent of the husband.

As to the second point as to limitation, the court did not err in holding that the cause of action was not barred by limitation. The circumstances show that there was no adverse claim or repudiation of the trust by Eliza Anderson during her lifetime. Andrews v. Smithwick, 34 Tex. 544. And laches cannot be imputed to appellees. They wanted their mother to use and enjoy the property during her natural life, and so expressed themselves to her. The mother lived on the property as her home, in exclusive use and possession, until her death in 1926. She often declared the interests of appellees in one-half of the property. The suit was filed shortly after her death. The appellees were entitled to enforce the trust upon the lot at her death, and would not be barred of that right, because the appellants, members of the family, had full notice thereof. The appellants were not in possession of the land under the deed, and the deed to Nellie V. Carter

was upon certain conditions requiring no re-entry by Eliza Anderson. The grantor in such deed was to occupy and use the property as a home during her "natural life." The deed was to be "void and of no effect," upon failure of Nellie V. Carter to perform the "conditions" set out. It is well settled that the appellees were not bound to resort to recovery of their father's interest in lot 1 in block 21. The grantee Joel Springs acquired by his deed both the legal and equitable title to such lot, as an innocent purchaser. Mitchell v. Schofield, 106 Tex. 512, 171 S. W. 1121. It became permissible for appellees to claim their equitable title in the lot on North Main street because of the wrongful conversion of their father's interest in lot 1 in block 21. Limitation began to run against such equitable claim, in the circumstances, only after the death of Eliza Anderson.

■ Fannie Barnes gave evidence, as conducive to presumed death of her father, Archie Anderson, that upon inquiry as to her father through letter to the minister of the Methodist Church at Sweet Home, Ark., she was informed by such minister that her father was dead. Her father's last fixed abode was Sweet Home, Ark. The appellants objected to the evidence, upon the ground "that the same was hearsay." The evidence was not admissible to prove the specific fact of death, which must be proved by the sworn evidence of one who knew the fact. The evidence, though, was admissible as a circumsance to be considered along with the other circumstances upon which to found the presumption of death. Such circumstances are not objectionable as "hearsay evidence." Primm v. Stewart, 7 Tex. 178; 1 Greenleaf on Evidence, § 41; Abbott's Trial Evidence (2d Ed.) p. 93; 1 Jones Com. on Ev. § 61. It was upon the rule of presumed death of seven years' absense without intelligence that the appellees relied. Fannie Barnes testified:

"My father left (Paris) when I was a small child. It is correct that he just disappeared, and we did not know what became of him, and I never saw him any more. I do know by general reputation that he left the state of Texas and went to Sweet Home, Arkansas. * * * When I heard he was dead I wrote her (witness' mother) about it. I was not here in Paris at the time. I was down near Houston. I wrote her about his death when I heard it about March (1900). * * * I was not in Sweet Home when he died; but I know he is dead, because I wrote to the minister of our church. I did that in 1900. I decided I would go and see him (her father). That is how I happened to write that letter. I never had been to see him, but he used to write to Mamma, and we knew he was in Sweet Home, Arkansas. When I decided to go and see him I found out he was dead. That is all I know about it, what somebody told me. When I testify he died in March, 1900, I testify to what some one wrote me; that is all I know about it."

■ The fact that "he used to write to Mamma" from "Sweet Home, Arkansas," would go to show that the whereabouts of Archie Anderson was known, and that such place was his fixed abode. It does not appear when he last wrote to his wife, but it does appear that information came of his death at Sweet Home from a person who would naturally have heard of it. After a long interval has passed he has not written to his wife or family or been heard of by any of the family. There is no circumstance tending to show that he has left his former residence of Sweet Home. Archie Anderson was a barber by trade; and Sweet Home, a small town, appeared as his fixed abode for some period of time. Upon inquiry made of the minister, who resided in Sweet Home, he stated to Fannie Barnes, the daughter, that Archie Anderson was dead. This inquiry, coupled with the fact that no more letters were written to the wife, and the long interval that has passed without any intelligence from him, would authorize a presumption of his death. The exact date of death may not be indulged, but the fact that he is dead may be indulged. The trial court was authorized to so find.

■ Appellants made objections to certain evidence, and have assigned error in respect thereto. The appellees' objection to consideration of the bills of exception must be sustained, since such bills of exception do not show the ground of objection or exclusion of the evidence. Drane v. Humble Oil & Refining Co. (Tex. Civ. App.) 4 S.W.(2d) 241.

We do not think the other assignments afford grounds for a reversal.

The judgment is affirmed.