**CARTER et al. v. BARNES et al.**

No. 1346—5475.

Commission of Appeals of Texas, Section A.
March 12, 1930.

Beauchamp & Lawrence, of Paris, for plaintiffs in error.

Wright & Baldwin and Edgar Wright, all of Paris, for defendants in error.

HARVEY, P. J.

In this suit, Fannie Barnes and Eliza Freeman, claiming as heirs of Archie Anderson, seek to recover of Nellie V. Carter one-half interest in a certain city lot, in Paris, Tex. So far as necessary to be stated here, the facts are as follows:

Archie and Eliza Anderson, both former slaves, were living together as husband and wife for a number of years after the Civil War and prior to April 11, 1870. They had two children, Belle and Fannie, both of whom were born prior to 1870. Belle married and afterwards died. She left one child, Eliza— now Eliza Freeman. Fannie married J. F. Barnes. Fannie and her husband left Paris in December, 1892, and have not lived there since. Eliza Freeman and husband live in Garland county, Ark. By deed of date April 11, 1870, J. F. Craddock conveyed to "Eliza Anderson and Mary Rice" a lot on Short street in Paris. The deed recited a cash consideration of $250. Eliza Anderson and Mary Rice each paid one-half of this consideration. There is evidence tending to show that Craddock had agreed to sell the lot to Eliza and Mary some time before the date of the deed; and that Eliza, in the meantime, paid her part of the purchase money from her personal earnings. There was a log cabin on the lot, and Archie and Eliza, together with their children, were living there when Craddock agreed to sell the lot to Eliza and Mary. Archie abandoned his family about this time; and there is evidence to show that most of the purchase money, which was paid by Eliza on the lot, was earned by her after Archie left. Some two or three years after the Craddock deed was executed, partition deeds were exchanged between Eliza and Mary, whereby the lot was divided between them. When Archie abandoned his wife and family, he went to Sweet Home, Ark., where he established his domicile and continued to reside there for a long period of years. He never returned to Paris, where his family resided. Prior to 1900, he occasionally wrote to Eliza Anderson, but after that year she received no letters from him. The letters which were written by him to Eliza came from Sweet Home. At the trial of the case in the court below, Fannie Barnes was called to the witness stand by her counsel. On direct examination, she testified that Archie died in March, 1900. It developed on cross-examination that her statement that Archie died in March, 1900, was based exclusively on a declaration to that effect contained in a letter which she testified she received, during the year 1900, from a negro preacher at Sweet Home, to whom she had written for information concerning Archie. Information as to Archie being dead at that time has been received by her from no other source. When the hearsay nature of her testimony in this respect was developed on cross-examination, counsel for the plaintiffs in error moved to exclude same. This motion was overruled by the trial court. No other witness testified to

---

Archie's death or to the time of his death.

It does not appear that Archie and Eliza were ever divorced. However, some time after Archie abandoned her, Eliza married George Lowery; she having been advised that three years abandonment was the legal equivalent of a divorce. Nellie V. Carter is a daughter of Eliza and George. Nellie was born in October, 1880. In December, 1900, Eliza exchanged deeds with one Joel Springs, whereby the Short street property was exchanged for a lot on North Main street in Paris. Eliza thereupon moved from the Short street place, where she had resided since Archie left, to the North Main street place, where she thereafter resided until she died in 1926. The lot last mentioned is the one in controversy. On May 20, 1903, Eliza executed to her daughter, Nellie, a deed conveying to her the North Main street place. Nellie was then unmarried, and she and her mother were living on the place. The deed recites the following consideration: "$1.00 in hand paid, and the further consideration of the love and affection I bear to Nellie V. Lowery, she being my baby child, and the further consideration that Nellie V. Lowery shall well and truly care for me, feed and clothe me during my natural life, and that I am to occupy and use (it) as my home during my natural life, and that Nellie V. Lowery shall pay all taxes, keep in good repair and not sell nor mortgage (same) so long as I live, and treat me kindly and care for me in sickness and old age, when all the above conditions are complied with, otherwise to become void and (of) no effect, and that Nellie V. Lowery shall make it her home as long as I live."

The trial court submitted the case to the jury on special issues as follows:

"Q. 1. Was the property conveyed by J. F. Craddock to Eliza Anderson in 1870 bought and paid for during the marriage relation of Eliza Anderson and Archie Anderson?

"Jury Answer: Yes.

"Q. 2. After the execution of the deed from Eliza Lowery (formerly Eliza Anderson) to Nellie V. Lowery did Nellie V. Lowery (now Nellie V. Carter) substantially comply with the provisions of the deed, which recited that Nellie V. Lowery should well and truly care for, feed and clothe Eliza Lowery during the rest of her natural life and treat her kindly and care for her in sickness and in old age?

"Jury Answer: She did."

The trial court gave judgment for the defendants in error. The Court of Civil Appeals affirmed said judgment. 16 S.W.(2d) 136.

■ It is well settled that, when necessary for her support, an abandoned wife, may, during the existence of the marriage relation, make a valid conveyance of community property of herself and her husband. Wright v. Hays, 10 Tex. 130, 60 Am. Dec. 200; Cheek v. Bellows, 17 Tex. 613, 67 Am. Dec. 686; Heidenheimer v. Thomas, 63 Tex. 287; Speer on Marital Rights (3d Ed.) § 228. The deed, therefore, from Eliza to Nellie, of date May 20, 1903, effected a valid conveyance of the community interest in the lot in controversy, not only of Eliza, but also of Archie, if the marriage relation between Eliza and Archie was undissolved when the deed was made. In order to sustain the claim of the defendants in error to an interest in said lot, the burden was on them to prove that said marriage relation, at the time this deed was executed, had been dissolved, either by the death of Archie or otherwise. The declaration of the negro preacher at Sweet Home, contained in the letter written by him to Fannie Barnes in 1900, to the effect that Archie was dead, is incompetent to prove the truth of the declaration. The declarant does not appear to be a relative of the family and is not shown to be dead. The trial court erred in refusing to exclude the testimony of Fannie Barnes which was based upon this declaration. Boone v. Miller, 73 Tex. 557, 11 S. W. 551; Summerhill v. Darrow, 94 Tex. 75, 57 S. W. 942; 3 Jones Ev. (2d Ed.) § 1131 et seq.

■ It is contended that the money which Eliza earned after Archie abandoned her was her separate property; and that, because most of the purchase money for the half interest in the Short street lot was paid from these earnings, the lot, to this extent, became the separate property of Eliza. By virtue of statutory provisions existing at the time, all property acquired by either the husband or the wife, during the marriage, except that acquired by gift, devise, or descent, was deemed the common property of both. Pasch. Dig. art. 4642. The personal earnings of each of the spouses come plainly within the purview of this statute. We have discovered no sound reason to believe that an abandonment of the wife by the husband worked a destruction of the right of the latter to a community share in property embraced by the terms of the statute. In our opinion, such an abandonment, together with the failure of the husband to contribute to the support of the wife, did not, of themselves, divest the husband of a community share in the wife's earnings, and do not, of themselves, furnish a legally sufficient basis for an inference that a gift from the husband to the wife was intended.

No reversible error is shown in the application for writ of error, except in respect to the testimony of Fannie Barnes as hereinabove pointed out.

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be reversed and the cause remanded.

**608**

**CURETON, C. J.**

The judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.