## BRAND v. BRAND.

No. 3039.

Court of Civil Appeals of Texas. Beaumont.

Feb. 25, 1937.

Rehearing Denied March 3, 1937.

Barnes & Barnes and J. B. Synnott, all of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellee.

O'QUINN, Justice.

This is an appeal from a judgment in a divorce proceeding. The appellant sued appellee for divorce. The suit was filed August 6, 1935. Appellee answered and filed a cross-action for a divorce and for a division of what she alleged was their community property, and for attorney's fee. The case was tried to the court without a jury and judgment rendered (a) awarding appellee a divorce on her cross-action; (b) that appellant at the time of his marriage to appellee owned as his separate property an undivided one-half interest in lots 19 and 20 in block 2 of the Ellis addition to the city of Beaumont, together with the improvements thereon, but that there was an indebtedness in the sum of $2,200 existing and outstanding against said property at the time they married and that said indebtedness was paid off and discharged out of community funds of appellant and appellee; that appellee have judgment over and against appellant's undivided one-half interest in said property for one-half ($1,100) of the amount so paid out of the community funds after their marriage, and granted to appellee an equity in said property to the extent of said sum of $1,100; (c) that at the time of appellant's marriage to appellee he was in possession of a certain insurance policy described in the pleadings, said policy being the separate property (and the community property of appellant's first marriage), but that after the death of appellant's first wife, and after appellant's marriage to appellee, appellant paid out of the community funds of appellant and appellee the sum of $288 as premiums on said policy, and awarded to appellee judgment against appellant for one-half of said sum so paid for premiums, or $144; (d) and awarded to appellant judgment for $50 as an attorney's fee, and also awarded to appellant and appellee their respective share of the household furniture as agreed upon by them at the time of their separation.

312

T. M. Brand brings this appeal, and while in his brief he prays that the judgment be reversed and rendered in his favor, from the nature of his assignments of error upon which he relies for a reversal, we take it that he has appealed only from the judgment awarding appellee recovery as to an interest in the community property, and asks that same be reversed and rendered.

The record reflects the following facts: Appellant was married to appellee on June 17, 1928. They separated on January 12, 1935. Both appellant and appellee had been married before, and each had several children by their former marriage. As there is no appeal from the judgment for divorce, we will not state any facts relative to the lack of harmony in the home. As to the property rights, we find:

■ (a) At the time appellant married appellee he was employed by the Gulf Oil Corporation in the Pipeline Department at $225 per month. This employment continued from June 17, 1928, at $225 per month, up to 1930, when his salary was raised to $250 per month. This wage was received by him up to about the last of October, 1932, when he ceased to be an employee of the corporation. Of course these earnings were community property.

■ (b) At the date of the marriage appellee had 40 shares of the Gulf Oil Company stock. This was all paid for except the sum of $120, which was afterwards paid. This $120 was community property.

■ (c) In 1929 appellant bought 60 shares of stock and sold them for a profit of $20 per share, or $1,200. This profit was community funds.

(d) Appellant sold 20 of his 40 shares of the above-mentioned stock for some $1,320. The profit on the sale is not shown. Whatever it was, was community funds. He still owned the other 20 shares.

■ (e) While living with his first wife, appellant took out an insurance policy on his life in the sum of $8,000, payable to his wife. She died, and the beneficiary named in the policy was not changed. This policy also provided that, in the absence of death and the insured became disabled, the insurance was to be paid, and would be payable, to the insured (appellant). After appellant married appellee, he continued to pay premiums on the policy, and thereby under its provisions it was increased from $8,000 to $10,000. The amount of the premiums was $72 per year, and they were paid for four years, amounting to $288. This amount was community funds. About May 1, 1932, appellant became totally disabled, and about October 1, 1932, the company complied with the disability provision of the policy and paid to appellant the full sum of $10,000. At this time his employer paid to appellant the sum of $1,500 as a six-month salary bonus. This was community funds.

■ (f) In 1930 appellant purchased a Buick sedan, and, after he had separated from appellee and after he had filed his petition for divorce, he transferred this car to one of his daughters, he said to pay for board and meals for himself and his children. The car was community property and one-half of its value (amount not shown) belonged to appellee.

(g) At the time appellant married appellee, June 17, 1928, he owned an undivided one-half interest in lots 19 and 20 in block 2 of the Ellis addition to the city of Beaumont, Tex., and the improvements thereon. This property was acquired while appellant was living with his first wife. When she died, her one-half of the property descended to her children by appellant. There was an existing indebtedness against this property of $2,200. This was paid after his marriage to appellee. Appellant testified that he paid the $2,200 out of the $10,000 insurance money that he got for disability. He admitted that he made a number of payments on this debt with money he obtained from his son Horace. He also said that he, with the permission of his said son, from time to time drew on his son's bank account for such purpose. He admitted that he had not paid any of the money back to his son. He also admitted that during the time he lived with appellee he speculated on the stock market, at one time dropping as much as $2,800. The court held that this $2,200 was paid out of community funds, and that appellee was entitled to an equity in appellant's one-half to that amount.

■■ (h) It appears that appellant had bought for use in connection with the farm considerable valuable farm implements, and that in December, 1934 (just before leaving appellee on January 12, 1935), he sold this machinery, together with 15 bales of cotton, 200 bales of hay, 350 barrels of corn, 2 teams, 4 cows, and a calf, and 60 hogs, for a considerable sum (exact

amount not shown), none of which reached appellee, and, since its disposition was not certainly shown, it is to be presumed that he appropriated the same to his own use. This was community property, and one-half of the proceeds of the sale belonged to appellee.

Appellant strenuously insists that the judgment awarding appellee an equitable interest of $1,100 in appellant's undivided one-half interest in the lots in question is not only erroneous, but without support in the evidence to show that the $2,200 paid out by appellant on the lots after his marriage to appellee was made out of community funds, but that to the contrary the undisputed evidence is that said payment was made out of the $10,000 received by appellant as disability insurance, and so paid out of his separate funds. This is the determining question in the case. There is a full statement of facts in the record agreed to by the parties and approved by the court. The court also filed findings of fact and conclusions of law. Among other findings of fact, he found that during the six and one-half years appellant lived with appellee he "commingled and mixed his separate property and the proceeds therefrom with the common property, and funds of plaintiff and defendant and made no attempt to keep it separate and apart or to keep an account thereof." This finding has full support in the evidence. This would question appellant's testimony that he paid the $2,200 balance due on the lots out of the disability insurance money that he received, and support the court's finding that it was paid out of the community funds. Further, it appears that the small payments made by appellant from time to time on the $2,200 balance due on the lots, amounted to $580 by January 22, 1931, which was some year and one-half before he received the $10,000 disability insurance money, and so his testimony that he paid the entire $2,200 out of the insurance money was not correct. Also the fact that he commingled the moneys received by him—community funds and others—and no separate account was kept of them, showed the unreliableness of his testimony as to the manner in which the $2,200 debt was paid. The lack of certainty as to what was done with the $1,200 profit on the stock sale, and the disposition of the $1,500 salary bonus, with the other facts and circumstances in evidence, were amply sufficient to justify the court in disbelieving appellant's testimony that he paid the whole of the $2,200 balance due on the lots out of his disability insurance money, and to support his finding that such payment was made out of the community funds. Moreover, appellant was the only witness to testify that the payment was out of the disability insurance money, and, he being not only interested in the result to be reached, but, according to his own testimony, prejudiced against appellee, the court was not compelled to believe his testimony, but could, if thought proper, disbelieve him. That the court did not believe appellant is also shown by the fact that he granted appellee a divorce on her cross-bill. There were only four witnesses who testified: Appellant on the one side, and appellee and Howard Brand, a son of appellant, and his wife, on the other.

Appellant tries to justify his statement that at the time of the trial he had no money by saying that he had an expensive family and the money received by him was spent for living purposes. He received $225 per month wages for quite a time after marrying appellee, and $250 per month after that until he was retired because of disability. He received a profit of $1,200 on the sale of stock, and a six-month salary bonus of $1,500 at the time he was retired by the company. That all of this together with other moneys received had been spent for living purposes was, to say the least, remarkable. However, the absence of the money, if it was so, may be accounted for by the fact that, as appellant testified, he took a swing or two at the stock market, and thus it disappeared. And, too, when appellant on cross-examination was asked in substance if he had not said that he had his property so fixed as that his wife, appellee, would not get a cent of his money, he answered, "No, sir; I don't know that I ever made it." He was then asked if he had made any similar statement, to which he answered: "I don't know that I made a statement; I have said I don't see how she can get blood out of a turnip." It is our opinion that this statement of appellant not only showed prejudice toward appellee, but was not calculated to impress the court with the sincerity or correctness of appellant's testimony. In any event, the findings of the court are supported by the record, and under the evidence his conclusions of law have support.

The judgment is in all things affirmed.