VIRGEAN ESTES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4607. Promulgated January 31, 1945.

*Gene Lary, Esq.*, for the petitioner.
*John W. Alexander, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: We have for construction here section 25 (b) (1) and (2) of the Internal Revenue Code, as amended (as to section 25 (b) (1)) by section 6 (a) of the Revenue Act of 1940,[1] and the same

---

[1] SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME.

\* \* \* \* \* \* \*

(b) CREDITS FOR BOTH NORMAL TAX AND SURTAX.—There shall be allowed for the purposes of the normal tax and the surtax the following credits against net income:

(1) PERSONAL EXEMPTIONS.—In the case of a single person or a married person not living with husband or wife, a personal exemption of $800; or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $2,000. A husband and wife living together shall receive but one personal exemption. The amount of such personal exemption shall be $2,000. If such husband and wife make separate returns, the personal exemption may be taken by either or divided between them.

(2) CREDIT FOR DEPENDENTS.—$400 for each person (other than husband or wife) dependent upon and receiving his chief support from the taxpayer if such dependent person is under eighteen years of age or is incapable of self-support because mentally or physically defective.

section of the Internal Revenue Code, as amended by sections 111 and 113 of the Revenue Act of 1941. Since, except for the figures involved, the statutes are the same, so far as concerns any issue in this case, only section 25 (b) (1) and (2) of the Internal Revenue Code, as amended by section 6 of the Revenue Act of 1940, is set forth in the margin.

The petitioner contends that she is entitled to personal exemption of $2,000 in 1940, and $1,500 in 1941, as the head of a family; and to credit for $800 for two dependents, her father and mother in 1940, and for $400 for one dependent, her mother, in 1941.

It is the respondent's contention, first, that, since the petitioner's husband, undivorced, but living separately, also claimed and was allowed a personal exemption as the head of a family, consisting of himself and his mother, there can not be two exemptions on the basis of head of a family, in the same family; and, secondly, that, even if such is possible, the petitioner did not meet the requirements of Regulations 103, section 19.25–4, based upon the sections and defining "head of a family," and that her parents were not dependent on her.

After much study of the language of section 25 (b) (1), we have come to the conclusion that the Commissioner is in error in the view that under the circumstances here presented personal exemption as head of a family may not be allowed to both husband and wife. It is true that the language of subsection (b) (1) is not easy of interpretation. It first states that the personal exemption of "a married person not living with husband or wife" shall be $800 (or $750 in 1941). If this provision stood alone, it would be clear that the petitioner would be entitled only to that amount of personal exemption. Immediately thereafter, however, and in the disjunctive, indicated by "or," a different provision is set forth, so that it appears that the first provision does not necessarily govern; and the next provision is that "in the case of the head of a family or a married person living with husband or wife" the personal exemption should be $2,000 ($1,500 in 1941). Thus, we see that even though we have before us a married person not living with her husband, we are required to consider whether she is the head of a family, and this requirement is further indicated by the fact that the second provision also is put in the disjunctive, that is, it covers the case of the head of a family *or* a married person living with husband or wife. We conclude from this language that though one of two married persons living together is entitled to the personal exemption, the head of a family is also entitled thereto, regardless of whether living with husband or wife; in other words, that a married person, even though not living with husband or wife, is, if she or he be in fact the head of a family, entitled to the higher personal exemption. This

interpretation is further indicated by the language immediately following, that is, "A husband and wife *living together* shall receive but one personal exemption" (italics supplied), indicating to us that if they do not live together there may be more than one personal exemption, provided the party involved is "the head of a family." Though it is also provided that if "such" husband and wife makes separate returns, the personal exemption may be taken by either or divided between them, in our opinion "such" necessarily refers only to a husband and wife living together, and does not cover the instant case. Our conclusion above is fortified by Regulations 103, section 19.25–4, in that the definition of head of a family therein set forth makes no requirement as to whether the individual has a husband or wife.

Neither the petitioner nor the respondent has cited any case of any help on this question. It appears to be altogether one of first impression. Respondent's citation of the law of Texas, that a husband is the head of a family, as defined in that jurisdiction, is without weight, since we are here construing the language of a Federal statute, which does not expressly leave the definition to state law. *Burnet* v. *Harmel*, 287 U. S. 103; *Houston Farms Development Co.* v. *United States*, 131 Fed. (2d) 577. We believe our conclusion above to be required by the language of the statute, the regulation, and the general object of the statute, and a just and fair interpretation of the statute and regulation requires the allowance of the higher personal exemption. The mere abstract fact that the parties had not been divorced (in which case no doubt there would be no argument against allowance of two exemptions), weighs little against the realities of support by each of the married parties, of those actually dependent upon them. The regulation gives the status of head of a family to a person "who actually *supports* * * *." (Italics supplied.)

However, though the respondent does not suggest it under this issue, we have considered whether the status of head of a family should be affected by the fact that the petitioner herein received the larger part of her income from her husband—for there would appear to be inconsistency in allowing two exemptions against the same income. Assuming that that argument might have weight in a case where the wife's income was furnished by the husband out of his own separate income, it is not applicable here for the reason that the husband and wife were, under the laws of Texas, members of a marital community. The income was community property. *Lilly* v. *Yearny*, 152 S. W. 823; *Brand* v. *Brand*, 102 S. W. (2d) 310. One-half thereof was returnable by the wife. *McLarry* v. *Commissioner*, 30 Fed. (2d.) 789. She did not receive the income as a gift, but as owner. It was "the common property of both." *Carter* v. *Barnes*, 25 S. W. (2d) 606. The

husband and wife each reported one-half of the income, though in fact the petitioner did not receive one-half, but only about $150 per month (out of one-half of community income of $12,381.18 in 1940 and $4,159.82 in 1941). In this case, therefore, it is plain that the amount received by the petitioner was her own income, and in fact she reported and paid tax on much more than she received. The fact that such income was a part of that of a marital community does not, in our opinion, indicate any conclusion in logic that the husband is the sole and only head of the family. Even if that were true as a matter of law of marital community, it would not govern this matter of definition in a Federal statute. We note further that the husband did not obtain his allowance of the personal exemption because of the petitioner, but only because of maintaining his widowed mother in his home. Thus, there appears no duplication of personal exemption granted because of the inclusion of the petitioner in more than one family. We conclude that petitioner may not properly be excluded from classification of head of a family merely because her undivorced husband, living apart from her, had, because of maintaining his mother in his home, also obtained such classification.

Did the petitioner otherwise qualify as the head of a family? To do so she must, under Regulations 103, section 19.25–4, actually support and maintain in one household one or more individuals who are closely connected with her by blood, marriage or adoption, with right to exercise family control and provide for them as dependents, based upon some moral or legal obligation. Under the record herein, the petitioner did actually support her father and mother in one household. She furnished their entire support, with the exception of $50 earned by the father in 1940, unless it be considered that she did not provide the home itself, and the $32 per month gross income from some small rental properties. The respondent contends that although the years involved here are 1940 and 1941, and she had received title to the properties about 1935, nevertheless she was not supplying such home (and $32 income from the other properties), because, he argues, the properties had been deeded to her by her mother, with the understanding, in effect, that the parents would retain the use thereof for their lives. The evidence discloses that the petitioner did not know of her ownership of the properties until three or four years after her mother had deeded them to her. It not only follows that there was no agreement of retention of use by the parents, but it is further the evidence that there was no such agreement. Thus it appears that even though the parents did "expect to continue to live in the home the rest of their lives" and did in fact say nothing about it and continued to use the small amount of net income from the other prop-

erties, they had no legal right to do so, and further that the petitioner, knowing of her ownership of the properties in 1940 and 1941, was in fact furnishing her parents the use thereof. Though it is true that both mother and daughter referred to the property as "their home"—referring to the parents—and petitioner once referred to their owning it, we think, on the whole record, that this was no recognition that the property belonged to the mother and father, but only that they were making their home there. The property had never belonged to the father, having been inherited by the mother. It was, of course, their home, in the sense that they lived there. After learning of her ownership, the petitioner expended money upon the property, and in particular upon reroofing it. She also furnished about $75 a month for the support of her parents. We conclude from all of the above that she did actually support and maintain her parents in a household provided by her. The only question, therefore, that remains, is whether she exercised family control—for the moral or legal obligation to support her parents is not in question. The question of actual dependency is separately raised in connection with the exemption based upon dependency of the parents, and will hereafter be discussed. We conclude from the record that the petitioner did have such right to exercise family control and provide for her parents. The evidence discloses that she was recognized by the parents as controlling the family during the course of its affairs and decided family matters, also that the parents leaned on her and did as she suggested and requested at all times. It is true that petitioner was absent most of the time because of the necessity of being away from her parents and home while teaching, on concert tours, and while attending the University of Chicago, and that she appears to have spent not much more than six weeks each year, besides such holidays as Christmas and Thanksgiving, with her parents. Nevertheless, she sent them money every month, averaging about $75 per month, whether she was at home or not. The absence was certainly not "without necessity," under the regulation, the support was continuous, and in our opinion the exercise of family control was amply sufficient. The petitioner as the owner of the home, as known to her during the taxable years, the owner of the properties contributing a small amount to the support of the family, and the contributor of practically all other moneys used, had such right of control and actually exercised it.

It is also contended that the parents were not dependent upon the petitioner during the taxable years. Answer to this question is required both because the definition of head of a family in the regulation mentions the right to control and provide for "dependent individuals," and because the petitioner claims the credit for dependents

under section 25 (b) (2). It is argued that there was no dependency of the parents upon petitioner under the regulation, requiring "chief support" to come from the claimant, because petitioner was not the owner of the home and the rental properties contributing some small amount net out of $32 gross rentals, having received them subject to the intention of all parties that petitioner would not take possession or control until death of the parents. We find only an expectation to that effect, and no agreement restricting petitioner's title. As we have above stated, in our opinion, petitioner was the owner. True, upon cross-examination, she did make the statement that "they owned their home in Commerce," but elsewhere, referring to the properties, she said that she was willing to accept them and pay the taxes, that she considered it her property in a sense, that she did not report the rents from the rental properties because she did not use the money and did not get it; and the mother stated that the daughter owned the house, that it was given to her, and that she owned the rental properties. The fact that the petitioner did not report as income the annual rentals is explained by her lack of knowledge thereof for several years, and though the failure to so report in 1940 and 1941, after she knew of her ownership, is, of course, inconsistent with her present claim, we do not think it is a weighty circumstance. Her husband, a lawyer, made out the income tax returns for her. There was, in fact, under the record, "very little" to report from the rental properties after payment of taxes and other expenses against them. She did not receive the money and had some idea that it was not necessary to report it. The fair rental value of the home is not in evidence. Yet, Commerce is a small town of 5,000, with living expense about half as much as in Kilgore. We conclude from the record that the petitioner was the chief support of her parents.

The father was so deaf that he earned only $50 during the two taxable years and both he and the mother were in ill health, he having been confined to bed two months about 1940, and she having to be kept in hospitals at various times, at petitioner's expense. Clearly, the parents were "incapable of self-support" and dependent upon the petitioner. We conclude and hold that the petitioner was the head of a family, within the statute and regulation, and that as such she was entitled to a personal exemption of $2,000 in 1940 and of $1,500 in 1941; also to credit for dependency of $800 in 1940 and $400 in 1941.

Because of other matters placed in issue,

*Decision will be entered under Rule 50.*