**Bernard D. SPECTOR,
Plaintiff-Appellant,**

v.

**L Q MOTOR INNS, INC., et al.,
Defendants-Appellees.**

No. 74–2549.

United States Court of Appeals,
Fifth Circuit.

Aug. 8, 1975.

Rehearing and Rehearing En Banc
Denied Oct. 3, 1975.

GIBSON, Circuit Judge.

This fraud action involves a sale of securities used to fund a divorce property settlement between Bernard D. Spector, the plaintiff, and his wife. Violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1970), SEC Rule 10b–5, 17 C.F.R. § 240.-10b–5 (1974), and pendent state claims [1] are alleged against L Q Motor Inns, Inc., its controlling shareholder-directors, Samuel E. Barshop, Philip M. Barshop, and Norman S. Davis, and the plaintiff's former wife, Doris Barshop Spector. Jurisdiction is invoked under § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa (1970).[2] Diversity of citizenship is lacking, so federal jurisdiction rests solely upon the alleged Securities Act violation.

The plaintiff seeks $1,144,406 in damages plus attorney's fees. The defendants, without filing an answer, moved to dismiss for lack of jurisdiction. The District Court after a nonevidentiary hearing granted the motion on the basis that the alleged "sale" of securities was not "the type of transaction intended to be protected and covered" by § 10(b) and Rule 10b–5. We reverse and remand for a plenary hearing on the merits.

 Since this is an appeal from dismissal for lack of jurisdiction, the well-pleaded allegations of the complaint must be taken as true. *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971); *Herpich v. Wallace*, 430 F.2d 792, 802 (5th Cir. 1970). Our review is limited to observing whether the complaint is drawn to seek recovery under a federal statute, and if so, determining whether as a matter of law the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or * * * is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678,

Ernest J. Altgelt, III, James D. Stewart, San Antonio, Tex., for plaintiff-appellant.

Joel Pullen, J. Burleson Smith, San Antonio, Tex., for defendants-appellees.

Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.

* Of the Eighth Circuit, sitting by designation.

1. As pendent claims Spector alleges state securities fraud, breach of fiduciary duty, common law fraud and unjust enrichment.

2. The statute reads in part:

The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter [2B] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). If not, dismissal for lack of jurisdiction was error. *Dann v. Studebaker-Packard Corp.*, 288 F.2d 201, 206 (6th Cir. 1961).

■■■■ Jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action or because the plaintiff is unable to prove his case. Such failures call for dismissal on the merits, not on jurisdictional grounds. *Bell v. Hood, supra* at 682, 66 S.Ct. 773. To be sure, this case presents a novel factual setting for a federal claim of securities fraud, as it arises out of a property settlement in a divorce action. Although the divorce and its attendant property settlement are controlled by state law, plaintiff's 10b–5 claim falls within the subject matter jurisdiction of the federal courts. Whether plaintiff is entitled to relief depends upon a number of factual questions. The key issue appears to us to be whether plaintiff was the legal and equitable owner of the securities in question with full rights of disposal, unfettered by controlling restrictions on alienation.

The transaction urged as a basis for federal jurisdiction was a transfer of 18 shares of common stock by Spector as part of a divorce property settlement concluded with his wife in the District Court of Bexar County, Texas, March 16, 1972. Immediately after entry of the divorce decree the parties executed and exchanged some 20 documents prepared in advance by counsel for both sides which were the product of two years of negotiation that began in 1969 when Mrs. Spector filed for divorce.

The Spectors' community estate, itemized in the final settlement agreement, included 40 shares of common stock in Barshop Motel Enterprises, Inc. (BME), a privately held predecessor to defendant L Q Motor Inns, Inc., a publicly held

Delaware corporation operating a chain of 31 inns in southwestern states. BME was one of various business interests owned by Mrs. Spector's family, the Barshops. The certificate for the 40 shares of BME stock was registered in Mrs. Spector's name and constituted one-third of the outstanding capital stock of BME. From the start of the negotiations Spector claimed community ownership in the stock. In partial settlement of Spector's community property claims, he was issued a certificate for 18 of the 40 BME shares.[3] A stock purchase agreement was executed by BME contemporaneously, obliging Spector to immediately endorse the certificate back to BME in exchange for $70,000 cash and a secured promissory note in the amount of $300,000. Spector received other community assets and liabilities in the settlement as well, free of Mrs. Spector's claims.

Soon after BME purchased Spector's 18 shares, the defendants Barshop acquired the stock from BME for the same price, and in June, 1972, they incorporated as L Q Motor Inns, registered with the S.E.C., exchanged BME's assets for L Q stock and successfully sold L Q securities to the public. They acquired an equivalent 151,406 shares of L Q in exchange for the 18 BME shares purchased from Spector and in turn sold them publicly for $1,862,294.[4]

Plaintiff Spector alleged in his complaint, without mentioning the divorce, that during the negotiations for sale of his BME shares he inquired of BME's representatives (the defendants) "as to the current status of [BME's] efforts to effectuate a public sale of its securities." The defendants' response was that discussions with brokerage houses concerning public financing were under way but that there was "not presently in effect any contractual agreement for any such public financing."

---

**3.** The new certificate was dated March 14, 1972, two days before the divorce decree. It represented 15% ownership of the corporation.

**4.** Thus, in effect, the defendants bought the shares from plaintiff for the equivalent of $2.44 per share and sold them publicly at $12.30 per share. They were able as well to raise $615,000 for the corporation in the public offering.

BME's formal purchase agreement dated March 16, 1972, contained an express warranty to the same effect—disclaiming the existence of any present public financing contract.[5] The defendants inserted the warranty into the draft agreement at the request of the plaintiff. Before they signed the warranty on March 16, 1972, however, plaintiff alleges, the defendants had already conducted "discussions, made plans, and [taken] steps to effectuate an exchange offer" in which a new corporation would be formed to acquire BME's assets and to sell securities to the public.[6]

As the basis for his claim of federal jurisdiction Spector argues that the transaction was a "sale" of securities and that the defendants in the March 16, 1972, agreement willfully concealed material facts—that the ultimately successful public offering had already been proposed and specific details discussed with the chosen underwriter. Disclosure of the proposed public sale, Spector argues, was necessary in the circumstances to prevent BME's statements from being misleading to him. And, had the defendants disclosed their plans to him he would have "refused to sell his common stock, or any part thereof, at the price at which it was actually sold."

The only question now presented is whether the trial court erred in dismissing the suit for lack of jurisdiction without hearing the merits. Allegations of a violation of § 10(b) and Rule 10b–5 were made, but no proof was offered beyond the documents relating to the property settlement negotiations, divorce decree and L Q Motor Inns' public financing.[7] At the end of the hearing the court summarily dismissed the suit, finding that the plaintiff's cause of action grew out of an indivisible property settlement in the divorce action and concluding that the instant transaction was not of a type intended to be covered by the Act.[8] Plaintiff, of course, was still free to seek relief in the Texas courts.

■ In support of dismissal, the defendants argue that the court lacks subject matter jurisdiction because no "sale" of securities took place. Spector, they argue, merely agreed to settle his community property claims against his wife in exchange for $400,000. The 18 shares

---

**5.** The BME stock purchase agreement drafted by BME's counsel states in relevant part:

### RECITALS

\* \* \* \* \* \*

[T]here have been discussions with various brokerage houses in the past concerning such public sale of securities and/or public financing and/or mergers with third parties and \* \* \* such discussions are continuing and are expected to continue in the future, but BME has warranted to Spector that there is not presently in effect any contractual agreement for any such public financing \* \* \*. (Emphasis added.)

**6.** The extent to which these plans were then finalized into a "public financing contract" are in dispute. In his brief on appeal to this court the plaintiff alleges that in June, 1971, three of the defendants met officers of E. F. Hutton & Co. concerning a public offering of securities of the chain of motels controlled by BME. After the conference a vice-president of E. F. Hutton's New York corporate underwriting department reportedly stated in a letter to BME:

Based on what we know to date, it appears eminently reasonable to expect a highly successful offering for BME early in 1972 \* \*.

During the fall and winter of 1971, BME's counsel continued working on the proposed public offering with E. F. Hutton. On March 8, 1972, the week before BME purchased Spector's 18 shares, defendant Davis and a member of his law firm attended a conference in San Antonio between the Barshops and three officers of E. F. Hutton. It was then agreed, plaintiff alleges, that a prospectus would be prepared and filed with the S.E.C. for a public offering of roughly 300,000 shares at approximately $15.00 per share.

**7.** The documents included correspondence between Spector's counsel and counsel for Mrs. Spector (and BME) detailing the proposed property settlement, the settlement agreement itself, the judgment of divorce, the BME stock purchase agreement, the exchange offer and bill of sale transferring BME's assets to L Q Motor Inns, and L Q prospectus, memoranda to the court, and affidavits of defendants' counsel discussing the transaction.

**8.** The court's May 7, 1974, memorandum opinion is unreported.

of BME stock was used as a medium or device to supply $370,000 of the $400,000 settlement. The Barshops agreed (through BME) to issue Spector 18 shares of stock only for the purpose of purchasing it back from him immediately for $70,000 cash and a $300,000 note. At no time, they argue, did any "separate, independent negotiations [take place] which were unrelated to the divorce suit based solely on a true purchase and sale of the BME shares." The stock purchase was simply "the means used to get this money to Spector."[9]

■ The District Court, we believe, should have considered more extensively the merits of the controversy in a plenary hearing in order to insure a proper determination of jurisdiction. The jurisdictional and substantive issues are factually meshed. Therefore, decision on the jurisdictional issues is dependent on decision of the merits and should have been reserved until a hearing on the merits. *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *McBeath v. Inter-American Citizens for Decency Committee*, 374 F.2d 359 (5th Cir.), *cert. denied*, 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967). If the plaintiff prevails on his theory on the merits then he would also prevail on the jurisdictional issue. It is impossible to decide one without the other. *See also Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 213–14, 95 S.Ct. 392, 42 L.Ed.2d 378 n. 10 (1974) (Douglas, J., dissenting).[10] Such a

procedure is authorized by Rule 12(d), Fed.R.Civ.P.

■ Dismissal for failure to state a claim would also be inappropriate on the present record. It does not appear "to a certainty" that Spector would *not* be entitled to recover under any state of facts which could be proved in support of his claim. *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505, 506–07 (5th Cir. 1971). Moreover, because a decision on the merits in this case involves close factual questions of intent, reliance, and motive, along with legal questions on the significance of property rights recognized or created by the divorce settlement, summary judgment without a plenary hearing would be inappropriate. We do not suggest, however, that a directed verdict for the defendants might not be appropriate after all the evidence is in nor do we intimate any view on the merits of either party's position.

■ That a sale of securities was alleged and can be proved by the plaintiff cannot be realistically disputed here. The precise nature of Spector's interest in the 40 BME shares registered in his wife's name is a matter governed by Texas property law and is not now before us. Suffice it to say, however, that the plaintiff has alleged facts which, with the documentary evidence before the District Court on the motion to dismiss, support a finding that the 40 shares were community property and

---

9. In short, the defendants argue that the plaintiff *is trying to cast his claim in 10b–5 terms* because in that posture he has a "risk free shot" at improving his divorce settlement by more than one million dollars. That may be true, but to characterize the instant case as no more than a relitigation of the divorce action is to miss the point of Spector's complaint.

*Hardy v. Bankers Life & Cas. Co.*, 232 F.2d 205 (7th Cir.), *cert. denied*, 351 U.S. 984, 76 S.Ct. 1051, 100 L.Ed. 1498 (1956), upon which defendants rely, is inapposite here. It was a civil diversity action for conspiracy in which summary judgment was granted and affirmed upon res judicata grounds because the claim was foreclosed by a prior settlement in a state divorce proceeding involving substantially the same parties. The same claim of fraud was raised in the divorce action and rejected by the

state court against the plaintiff. The instant case, however, is a 10b–5 claim dismissed on jurisdictional grounds involving issues not revealed by the record as having been litigated in the state divorce court. We intimate no view, however, of the possible collateral estoppal impact of facts adjudicated in the divorce settlement.

10. *Cf. The Fair v. Kohler Die Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 412, 57 L.Ed. 716 (1913), in which Mr. Justice Holmes stated:

[W]hen the plaintiff bases his cause of action upon an act of Congress, jurisdiction cannot be defeated by a plea denying the merits of the claim. * * * [I]f the plaintiff really makes a substantial claim under an act of Congress, there is jurisdiction whether the claim ultimately be held good or bad.

that before the divorce settlement Spector individually owned an interest in at least some of them, notwithstanding that the shares were registered in his wife's name.[11] Thus, at this early stage in the proceedings, plaintiff is entitled to an inference that at all relevant times, even before the property settlement, he owned an alienable interest in the BME stock. *See Hilley v. Hilley*, 342 S.W.2d 565, 568 (Tex.1961).

That Spector requested the defendants to insert the warranty into the BME stock purchase agreement to disclaim the existence of a public financing contract lends credibility to his claim of ownership. If Spector viewed his interest in the 18 shares as merely that of a pay-out conduit, as defendants argue, BME's future plans for financing would be of no concern to him. However, at this stage in the case we have no idea what the facts were. Thus, to dismiss the exchange of stock as merely part of an "indivisible" divorce settlement not cognizable under 10b–5 was premature. In the divorce settlement, of course, Spector's community property equity in BME was liquidated to 18 shares and a stock certificate was issued to him March 14, 1972. The contract of sale to BME was executed two days later, March 16, 1972, immediately after the property settlement was approved and the divorce decree entered in state court. To label this transaction a "sale" requires no strained construction of that term.[12]

We believe the issue presented here can better be framed as a question of standing to be decided within the framework of the case or controversy requirement of Article III of the Constitution. *Herpich v. Wallace*, 430 F.2d 792, 805 (5th Cir. 1970). In determining whether a 10b–5 plaintiff has standing to invoke the federal remedy:

> "[T]he first question is whether the plaintiff alleges that the challenged [conduct] has caused him injury in fact, economic or otherwise." The second question is whether "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected" by section 10(b) and Rule 10b–5 thereunder.

*Herpich v. Wallace, supra* at 805 (citations omitted).

The first question can be resolved easily. There is no doubt that Spector adequately alleged injury in fact. He claims he was deprived by the defendants of a reasonable opportunity to make an informed, intelligent decision regarding his sale of the securities and suffered a loss in the sense of deprivation of a foreseeably more profitable sale

11. In community property states such as Texas, the beneficial interests of husband and wife in community property are presumptively equal, whether nominal title is in the wife, husband or both jointly. Thus, if during marriage property is placed in the wife's name, only legal title vests in her and equitable title to the husband's one-half of the property remains in him. *Carter v. Barnes*, 16 S.W.2d 136, 139 (Tex.Civ.App.1929), *rev'd on other grounds*, 25 S.W.2d 606 (Tex.Comm.App. 1930). Community property remains such unless formally partitioned in one spouse's name in accord with Texas statutory law, or unless transferred by gift from one spouse to the other. *Hilley v. Hilley*, 342 S.W.2d 565, 567–68, 571 (Tex.1961).

The instant record contains no findings of fact and scant evidence concerning the method by which Mrs. Spector acquired the certificate for 40 shares of BME stock—whether by gift, descent, or purchase with separate or community funds. Nor are there facts revealing any intent of the husband and wife that she would acquire the shares as her separate property, and no evidence of formal partition has been offered by the defendants to indicate such intent. On the contrary, there appears to be a judicial admission by the defendants and a similar decree by the Texas divorce court that Mr. and Mrs. Spector owned 40 shares as community property before the divorce and that Spector owned 18 shares free and clear of claims by his wife thereafter.

12. Section 3(a)(14) of the Act, 15 U.S.C. § 78c(a)(14) (1970), states:
 *Definitions and Application.*
 (a) *Definitions.*
 When used in this chapter, unless the context otherwise requires—

 * * * * * *

 (14) The terms "sale" and "sell" each include any contract to sell or otherwise dispose of.

had he known of the public financing plans.

The second question—whether the interest Spector seeks to protect is arguably within the zone of interests to be protected by the Act—reduces to whether the plaintiff has alleged with reasonable clarity that he sold securities that he had a right to sell, and that the sale was the subject of the fraudulent scheme or that the inducement of the sale was a purpose of the scheme. *Herpich v. Wallace, supra* at 808–09. The "purchase or sale" referred to in the statute and rule are not limited to technical common-law sales. *Dasho v. Susquehanna Corp.*, 380 F.2d 262 (7th Cir.), *cert. denied sub nom. Bard v. Dasho*, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967); *see Hooper v. Mountain States Securities Corp.*, 282 F.2d 195 (5th Cir. 1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). The terms of the Act are to be broadly construed to effectuate its remedial purpose. *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). We conclude that the plaintiff has adequately alleged fraud in connection with a sale of securities.

 The availability of relief under Texas law does not deprive Spector of his federal forum. *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). However, he must still prove his federal claim. We hold only that plaintiff must be given a chance to do so and that the court has jurisdiction to determine its jurisdiction by proceeding to a hearing on the merits.

The judgment of dismissal is reversed and the case remanded for further proceedings consistent with this opinion.